McFarland, J.,
delivered the opinion of the court.
This action was brought by Kimbrough against the. Mayor and Aldermen of the City of Memphis, to recover the damages alleged to have been sustained by the loss of a steamboat called the “Madison,”-with her furniture and equipments, which, it is alleged, was sunk while landing at the wharf in the city, by striking an iron cylinder negligently permitted to lie on the wharf, and which, at the time, was concealed by the water. There was a verdict and judgment for the plaintiff below, and the defendant has appealed in error.
The record shows that the city authorities were, under their charter, and in the exercise of a part of their franchises, in the possession of the wharf, and had been for a number of years. That, through its officers, it exercised exclusive control and jurisdiction over it, charged and collected tolls or wharfage for *135 its use by steamers and other “ water-craft,” regulated and controlled the manner of its use, and provided, by ordinances, how it was to be kept.
About the year 1861, an iron or cast cylinder, that had been part of the machinery of a steamboat, and which is described as about nine feet long and from thirty-two to thirty-six inches in diameter, was thrown upon the wharf, where it remained, at or about the same place, until February, 1867. At low or ordinary water, this cylinder was out of the water, and not dangerous; but during high water it was covered bv the water, and could not be seen, and was, therefore, dangerous. At the time the “ Madison ” left, upon her last voyage, the cylinder was not under water.' After a few days, the boat returned, and landed at night at her usual landing. At this time the river had risen, and the cylinder was covered by the water, and was not seen. The boat striking it, a hole was knocked in the hull, causing her to sink at pnce.
The question first made for a reversal, and mainly relied upon, goes to the entire foundation of the action; that is, that to keep the wharf free from dangerous obstructions was the duty of the wharfmaster,. a public officer, whose office is established by the law, and that the corporation is not liable for any loss accruing to third parties by reason of the failure of this officer to discharge his duty: that the action, if any accrued, should have been brought against the individual who at the time filled that office.
The proposition, that the State Government is not *136 liable for the misfeasance or malfeasance of its officers; or their failure to discharge their duties, is well settled, and admits of no doubt. See Clark v. The State, 7 Col., 315; City of Richmond v. Sorey’s Adm’r, 17 Grattan, 375, and authorities there cited; The State of Tennessee v. Ward & Briggs, 9 Heis., 100; and this rule has been, in a certain class of cases, applied to the acts of officers of a municipal corporation. Judge Dillon, in his work on municipal corporations, states the rule as follows: “ It may be observed in the next place, that when it is sought to render a municipal corporation liable for the acts of its servants or agents, a cardinal inquiry is, whether they are the servants or agents of the corporation. If the corporation appoints or elects them, and can control them in the discharge of their duties; can continue or remove them; can hold them responsible for the manner in which they discharge their trust; and if those duties relate to the exercise of corporate powers, and are for the peculiar benefit of the corporation, in its local or special interest, they may be justly regarded as its agents, and the maxim of respondeat superior applies. But if, on the other hand, they are elected or appointed by the corporation in obedience to the statute, to perform a public service, not peculiarly local or corporate, but because this mode of selection has been deemed expedient by the Legislature in the distribution of the powers of government: if they are independent of the corporation as to the tenure of their office, and the manner of discharging their duties, they are not to be regarded as the servants or *137 agents of the corporation, for whose acts or negligence it is implicitly liable; but as public or State officers, with such powers and duties as the statute confers upon them; and the doctrine of respondeat superior does not apply.-” See sec. 772.
Some of the cases in which it. has been held that the officers whose acts were in question were not .the servants of the corporation, so as to make the latter responsible, upon the principle of respondeat superior, may be cited. The ease of the City of Richmond v. Lorey, adm'r, 17 Gattan. 375, was where a slave, the property of the plaintiff below, was, in accordance with a city ordinance, admitted to the city hospital, to be treated for small pox; but, by the negligence of the attendants, was permitted to escape, and wandered off and died. Upon a review of the authorities, if was held that the city was not liable. It was held that the ease was very analogous to an action against the State, for similar neglect upon the part of its officers and agents, in its asylums for the insane, blind, or dumb, which, upon the same principle, was not maintainable.
It has likewise been held that no action lies against a municipal corporation for the acts of its police officers, such as an assault and battery in the arrest of an offender, or the unlawful refusal of a Recorder to accept bail. See Pesterfield v. Vickers, 3 Col., 205.
So, when firemen, on their way to a fire, ran over a party, with a hose reel and other similar implements. See Dillon on Municipal Corporations, secs. 773, 774, 775, and authorities there cited in the notes.
*138 On the other hand, it was held, in the case of The Mayor and Aldermen of Memphis v. Lasser, 9 Hum., 757, that the corporation was liable for the acts of its agents and officers in permitting a cistern to remain open in the street, into which the plaintiff fell and injured himself. It was said in that case, that the corporation could not shield itself by turning the injured party over to seek redress from irresponsible agents. This same doctrine has been held by this court, in the case of the Mayor and City Council of Nashville v. Brown, 9 Heis., 1. But, in the work before referred to, Dillon on Municipal Corporations, sec. 778, this precise point is directly stated. The author says that the doctrine may be considered as established, that where a duty is a corporate one; that is, one which rests upon the municipality in respect to its special or local interest, and not as a public agency; and is absolute and perfect, and not discretionary or judicial in its nature; and is one owing to the plaintiff, or in the performance of which he has an interest, the corporation is liable; as, for instance, where the city fails to keep the sewers in order. He adds: “So if a city owns a wharf, and receives wharfage or profit therefrom, it is liable for injuries caused by a failure to keep it in proper condition and repair.” To support this, various authorities are cited, and among them the case of Pittsburgh v. Greer, 22 Penn. St., 54, which we have examined, and which fully sustains the proposition. The case was very similar to the present one in its facts, being for the loss of a steamer, occasioned by pig iron ' be *139 ing negligently left on the wharf. In principle, the case is identical with the present.
The city of New York was held liable, after mature consideration, for injuries caused by the breaking of a dam on the Croton River, built to supply the city with water. The dam was built on the land of the city, and at its expense, but by commissioners appointed by the State, and not under the control of the city authorities. Mayor, etc., of New York v. Bailey, 2 Denio and same case, 3 Hill, N. Y.
Without discussing the authorities further, we think they settle the question in favor of the action of the Circuit Judge.
It is true, that the charter provides for the election of a wharfmaster; but the duty of keeping the-wharf free of obstructions is imposed upon him by the city ordinances, and the charter provision does not relieve the city from its responsibility;
It might well have employed other servants to discharge this duty. The duty is a corporate one, and1 not a public one in respect to the whole public. It is absolute and perfect, and not discretionary or judicial, in its nature; and the plaintiff had an interest in its performance. The wharf was in -the exclusive possession of the city authorities. It was their duty to keep it in repair. No one else was allowed to interfere with it. For this purpose, they assessed and collected tolls on wharfage; they entrusted the duty to an officer elected by them; and in discharging this duty he was not acting as a public officer, executing the laws of the State, but as the agent and servant *140 of the corporation, and for its benefit, and that of the individuals using the wharf. The authorities referred to are direct, and the reasoning of the court in the case of Pittsburg v. Greer, already cited, is very satisfactory.
2. It is argued, that there should have been no recovery, because the cylinder was in the possession of the U. S. Marshal, under process. There is nothing in this. One witness says that the cylinder had been libeled in the U. S. District Court; but it is very clear that it was not in the actual possession of any one, .so as to have prevented its removal to a place above high water mark by the city authorities, had they so desired.
3. It is objected, that the court told the jury that, in estimating the value of the boat, they might look to the proof of its cost. The charge on this question, taken all together, is not erroneous. There was great conflict between the witnesses as to the value of the boat. The jury were fully instructed that it was not the cost, but. the value of the boat, they were to ascertain. They were told, that they might consider the relative means of knowledge of the witnesses, aud, as a circumstance, the cost of, the boat; but the ■meaning was, that they were to look to this, only in connection with the other evidence, to fix the value.
4. The jury returned a special verdict: — 1st, The value of the boat less the value of the wreck, $9,550, interest $2,864; freight on said trip, not collected, $300.
The only evidence we find to support the verdict as to this last item, is in the testimony of the plain *141 tiff. He says that he did not know the actual amount of freight due for the trip before the boat sank, but that the average trips of the boat were about from $350 to $550. The -freights on the trip before the boat sank were never reported to him, and lie did not think they were collected. This testimony was objected to. We think this does not sustain the verdict upon this item. It was the duty of the plaintiff to furnish more satisfactory evidence upon this question. But as the verdict separates this item from the balance, the error may be corrected by this sum being remitted, if the defendant in error elects to do so; and upon this being done, the judgment may be affirmed.
Another question presented is this. The cause was tried in the' circuit court during the last term of this court. The defendant below prayed an appeal to the next term of the supreme court, meaning the April term, 1873. But the court required the appeal to be taken to the then sitting term, 1872. But as the cause was not called for trial during that term, the question is of no importance now, and we express no opinion in regard to it.
The judgment will be affirmed if the $300 be remitted, and reversed if this be not done.